Filed 4/16/14  P. v. Hines CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063609 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD241721) |
| JOHN WARREN HINES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  Affirmed in part, reversed and modified in part.

Patrick J. Hennessey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Quisteen Shum and Peter Quon, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant John Warren Hines appeals from his convictions and sentences related to two separate incidents. In the first, Hines confronted and assaulted a stranger in downtown San Diego. After his arrest for the first incident, while in custody, Hines accosted a sheriff's deputy who was attempting to remove Hines's waist chains.

A jury found Hines guilty of robbery, assault likely to produce great bodily injury, grand theft, and battery with respect to the first incident. Hines waived his right to a jury with respect to the charges related to the second incident. In a bifurcated bench trial, the trial court found Hines guilty of battery on a police officer causing injury and resisting an executive officer with respect to the second incident. The trial court also found true the allegations that Hines had suffered two prior prison terms as well as a serious felony conviction.

On appeal, Hines contends (1) that his conviction for battery on a police officer causing injury should be reversed because there is insufficient evidence that the bruising on the deputy's arm that resulted from Hines's actions constituted "injury" within the statute's meaning; (2) that his conviction for robbery should be reversed because there is insufficient evidence that he used either force or fear to take the victim's sunglasses, or that he intended to permanently deprive the victim of his sunglasses; (3) that his conviction for robbery should be reversed on the alternative ground that the trial court erred in failing to instruct the jury that grand theft is a lesser included offense of robbery, and allowed the jury to convict him of both crimes even though a properly instructed jury

2

might have found him guilty of only the grand theft and not the robbery; and (4) that the trial court erred in imposing both a one-year enhancement term under Penal Code[1] section 667.5, subdivision (b) and a five-year enhancement term under section 667, subdivision (a)(1), based on the same prior conviction.

We reject Hines's challenges to his convictions on grounds of insufficiency of the evidence. There is sufficient evidence to support his convictions for battery on a police officer causing injury, and for robbery. We agree with Hines's contention that the trial court erred in failing to instruct the jury that grand theft is a lesser included offense of robbery. However, the error does not require reversal of his robbery conviction. Rather, the court should have stricken Hines's conviction for the lesser offense of grand theft. We therefore reverse his conviction for that offense. Finally, the People concede, and we agree, that the trial court erred in imposing a one-year sentence enhancement under section 667.5, subdivision (b) while also imposing a five-year enhancement term under section 667, subdivision (a)(1), based on the same prior conviction. We therefore strike the one-year sentence enhancement.

---

[1]     Subsequent statutory references are to the Penal Code unless otherwise specified.

3

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

      1.    *Events of June 26, 2012 (counts 1-4)*

At approximately 8:40 a.m. on June 26, 2012, Howard Woods, who was 62 years old at the time, was walking west on B Street in downtown San Diego. Woods saw Hines standing next to the open rear door of a parked vehicle. Woods witnessed Hines reach into the car and remove an American flag. Hines noticed Woods watching him and asked Woods, "What the fuck you gonna do about it?" Hines then closed the car door. Woods did not respond and continued to walk down the street.

Hines followed Woods and asked Woods for a cigarette. Woods told Hines that he could not help him. Hines then held out a cigarette butt and asked Woods for a "light." Woods responded, "No," and then commented that he thought Hines had taken something out of someone else's car. Hines was carrying the American flag that Woods had seen him take out of the parked car. Hines responded to Woods's comment by telling Woods that he was a member of the West Side Crips. Woods interpreted Hines's reference to the West Side Crips as a claim that Hines was a member of a criminal street gang. After making this remark, Hines said to a woman who was standing nearby, " 'You want to see what I do to him?' " Woods heard Hines make this statement and understood Hines to be saying that he was planning to physically attack Woods. Woods became very nervous and wanted to get away from Hines.

As Woods crossed the street, Hines walked next to him, partially facing Woods, and made a gesture with his fist toward Woods, as if he were going to hit Woods. Woods flinched and stopped in the middle of the street. Hines then grabbed Woods's sunglasses off of his face and ran away. Woods attempted to chase Hines. Woods followed Hines, intending to flag down a police officer to report what had happened.

Woods saw Hines crouching behind some bushes along the sidewalk. Woods then walked toward a nearby business. Hines emerged from the bushes and began to follow Woods again. Woods demanded that Hines return the sunglasses. Hines then threw the sunglasses down into the gutter near Woods. Woods picked up the sunglasses and noticed that Hines had "somewhat bent" the glasses.

After Woods picked up the sunglasses from the ground, Hines walked up to him and said that he was going to kick Woods "in the balls." When Woods turned away from Hines, Hines struck Woods in the face with closed fists, and then moved quickly away. Woods did not attempt to chase Hines after the attack.

A few moments later, Woods was walking on Broadway and spotted Hines standing alone on the sidewalk across the street. Hines crossed Broadway, walked up to Woods, and said, " 'Please forget about it.' " Woods responded, "No . . . [n]ot happening." Hines became angry, made a few comments, and spit in Woods's face. Hines also jabbed Woods in the neck with a hairbrush.

Woods attempted to grab Hines, but Hines slipped out of Woods's grasp and began hitting Woods in the face with his fists. Woods fell to his knees. A police officer drove up at this point and ordered Hines to "get down." Hines stopped hitting Woods. The

5

officer placed Hines under arrest. Hines later told a different police officer that he was proud that he had assaulted Woods.

The arresting officer saw that Woods had a laceration to the back of his head that was bleeding, and also had significant bruising on his face. Woods was transported to the hospital by ambulance.

Hines testified on his own behalf. He acknowledged that at the time of this incident, he was homeless, was feeling depressed, and had not taken his medication for his bipolar mental condition. Hines admitted that he took Woods's sunglasses from his face and ran away with them. Hines also admitted that in response to Woods finding him in the bushes and demanding his glasses back, Hines broke the glasses and threw them in the gutter. He also admitted that he punched Woods in the face, saying that he did so because Woods began yelling for help.

2.    *Events of August 3, 2012 (counts 5-6)*

On the morning of August 3, 2012, in the San Diego Central Jail, Sheriff's Deputy Marie Chateigne placed waist chains and leg chains on Hines and escorted him to his psychiatric appointment. Hines told Chateigne that she was beautiful and that he wanted to marry her. Chateigne had warned Hines the prior day that he should not make comments like that to her. Chateigne ignored the comments that Hines made on August 3.

Later that morning, Deputy Chateigne escorted Hines from his medical appointment back to his cell. Hines apologized to her for his earlier behavior. After Chateigne removed Hines's leg chains, she moved Hines into his cell and closed and

6

locked the cell door. She then opened the flap covering over the food slot and instructed Hines to put his hand through the food slot. She began removing Hines's waist chains. Chateigne was briefly distracted, and Hines grabbed her left hand. He refused to let go of her hand despite her order that he do so.

Deputy Chateigne managed to escape Hines's grip by tugging on the waist chain. However, Hines then pulled the waist chain farther into his cell, causing Chateigne's left hand and arm to be pulled through the food slot and into the cell. Chateigne released her grip on Hines's waist chain, pulled her arm out, and closed the food flap.

Hines apologized to Deputy Chateigne for what he had done and promised that he would not put up further resistance. Chateigne reopened the food flap and told Hines to extend his arms through the slot. She then removed his waist chains. When Chateigne walked past the front of the cell door, close to the food flap, Hines rushed the door, put his face up to the food slot, and spit on Chateigne. After spitting on Chateigne, Hines said, "[T]hat's what you get for talking to the Mexican in the other cell."

Deputy Chateigne suffered significant bruising from her upper bicep to her lower forearm as a result of Hines's pulling her arm through the food slot. Although Chateigne did not seek medical treatment for her injuries, the bruised arm caused her much pain when it was touched, and the pain lasted for five days.

The trial court reviewed a video recording of Hines pulling Deputy Chateigne's arm through the food slot.

B.     *Procedural background*

A jury found Hines guilty of robbery (§ 211; count 1), assault likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), grand theft (§ 487, subd. (c); count 3); and battery (§ 242; count 4).

In a bifurcated bench trial, the trial court found Hines guilty of battery on a police officer (§ 243, subd. (c); count 5) and resisting an executive officer (§ 69; count 6).  The trial court also found true the allegations that Hines had suffered two prior prison terms (§ 667.5, subd. (b)) and a serious felony conviction (§ 667, subd. (a)).

The trial court sentenced Hines to an aggregate term of 16 years four months in prison.

Hines filed a timely notice of appeal.

III.

DISCUSSION

A.     *There is substantial evidence to support Hines's conviction for battery on a peace officer causing injury*

Hines contends that there is insufficient evidence to support his conviction for battery on a peace officer causing injury.  Although he admits that his conduct in pulling Deputy Chateigne's arm through the food slot to his cell caused bruising to Chateigne's arm, he asserts that the "bruising, for which the deputy did not seek medical attention, did not constitute an 'injury' within the meaning of Penal Code section 243, subdivision (c)(2)," and requests that his conviction be reversed, or, at a minimum, reduced to a misdemeanor.

8

In determining the sufficiency of the evidence to support a guilty verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.]' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

Hines was convicted of violating section 243, subdivision (c)(2). That subdivision must be read together with subdivision (c)(1) of the same section:

> "(1) When a battery is committed against a custodial officer [or other identified individuals], *and an injury is inflicted on that victim*, the battery is punishable by a fine of not more than two thousand dollars ($2,000), by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170 for 16 months, or two or three years.

> "(2) When the battery specified in paragraph (1) is committed against a peace officer engaged in the performance of his or her duties, whether on or off duty, including when the peace officer is in a police uniform and is concurrently performing the duties required of him or her as a peace officer while also employed in a private capacity as a part-time or casual private security guard or patrolman and the person committing the offense knows or reasonably should

9

know that the victim is a peace officer engaged in the performance of his or her duties, the battery is punishable by a fine of not more than ten thousand dollars ($10,000), or by imprisonment in a county jail not exceeding one year or pursuant to subdivision (h) of Section 1170 for 16 months, or two or three years, or by both that fine and imprisonment."  (Italics added.)

Subdivision (f)(5) of section 243 defines an "[i]njury" as "any physical injury which requires professional medical treatment."  However, " '[t]here is no requirement in [section 243, subdivision (c) that] the victim of the battery actually receive medical treatment.' "  (*People v. Hayes* (2006) 142 Cal.App.4th 175, 181 (*Hayes*), quoting *In re Michael P.* (1996) 50 Cal.App.4th 1525, 1528.)  " 'It is the nature, extent, and seriousness of the injury—not the inclination or disinclination of the victim to seek medical treatment—which is determinative.  A peace officer who obtains "medical treatment" when none is required, has *not* sustained an "injury" within the meaning of section 243, subdivision (c).  And a peace officer who does not obtain "medical treatment" when such treatment is required, has sustained an "injury" within the meaning of section 243, subdivision (c).  The test is objective and factual.' "  (*Hayes, supra*, at p. 181, quoting *People v. Longoria* (1995) 34 Cal.App.4th 12, 17.)

Hines relies on *Hayes*, *supra*, 142 Cal.App.4th 175, to suggest that there is insufficient evidence in this case.  He contends, "[t]he description of the injury in appellant's case is strikingly similar to that in *Hayes*."  According to Hines, the appellate court in *Hayes* found that the facts in that case "constituted substantial evidence that the 'injury' was not one that met the requirements of the statute," and for this reason, the court

10

"reversed the defendant's conviction." Hines's reliance on *Hayes* is misplaced, however, even if we assume that the injuries suffered by the victims in the two cases are similar.[2]

In *Hayes*, the appellate court was not addressing whether the injury that the victim suffered was sufficiently serious to meet the requirements of the statute. Rather, the court was addressing the defendant's argument that the trial court erred in failing to instruct the jury on the lesser included offense of simple battery (i.e., without injury) on a probation officer. (*Hayes*, *supra*, 142 Cal.App.4th at pp. 180-183.) On this question—i.e., whether there was instructional error—the *Hayes* court agreed with the defendant, concluding that given the evidence, "[a] reasonable jury could conclude that the injury to Phillips was not severe enough to require professional medical treatment," and, as a result, the trial court should have instructed the jury with respect to the lesser included crime of battery on a probation officer. (*Id*. at p. 181.) The *Hayes* court found the error prejudicial and reversed Hayes's conviction, giving the prosecutor the option of either retrying Hayes on the greater offense, or accepting a reduction to the lesser offense. (*Id*. at pp. 183-184.) In doing so, the *Hayes* court implicitly acknowledged that sufficient evidence had been presented to support Hayes's conviction for battery on a peace officer causing injury, the

---

2      The injuries suffered by Phillips, the probation officer victim in *Hayes*, resulted from the defendant "kick[ing] a concrete ashtray that was next to Phillips. The kick appeared to be intentional. [The defendant] kicked 'as hard as he could' and 'with great force.' " (*Hayes*, *supra*, 142 Cal.App.4th at p. 179.) The 50-pound ashtray struck the probation officer "in the shin, ripping his pants and inflicting 'a four to four and a half inch laceration on [his] shin.' " (*Ibid*.) The court received two photographs of the laceration in evidence. There was some blood on the laceration, and " 'a little swelling.' " (*Ibid*.) The probation officer put ice on his injury the night after receiving it, but he did not choose to seek professional medical treatment. (*Ibid*.) The leg was sore for several days, and took approximately a week to heal. (*Ibid*.)

greater offense.  Thus, despite Hines's reliance on *Hayes*, the opinion in that case actually undermines Hines's position that the evidence in this case was insufficient to support his conviction for the same crime.

In this case, the evidence is sufficient to support Hines's conviction for battery on a peace officer causing injury.  The bruising to Deputy Chateigne's arm was extensive and severe.  Chateigne testified that the bruising was "very painful" and that she suffered pain when her arm was touched.  The severe pain lasted for five days.   The bruising lasted much longer than that.[3]  Based on the evidence presented, the trial court could have reasonably concluded that although Chateigne chose not to seek professional medical treatment, her injuries were nevertheless the type that required medical treatment within the meaning of the statute.

We therefore affirm Hines's conviction for battery on a peace officer causing injury.

B.      *There is substantial evidence to support Hines's conviction for robbery*

Hines was convicted of robbing Woods, in violation of section 211.  He contends that the evidence is insufficient to establish his guilt for this crime because, he asserts, the evidence does not demonstrate that he had the intent to permanently deprive Woods of his property or that the property was taken by means of force or fear.

---

3      The photographs of Deputy Chateigne's bruising that the trial court reviewed were taken a week after Chateinge suffered the injuries.  Chateigne testified that on the day after she suffered the injuries, the bruising was "way more severe" than at the time the photographs were taken.

Robbery is the felonious taking of personal property in the possession of another from his person or immediate presence, against the victim's will and accomplished by means of force or fear. (§ 211; *People v. Whalen* (2013) 56 Cal.4th 1, 69.) A necessary element of the crime of robbery is the intent to permanently deprive the owner of his or her property. (*People v. Anderson* (2011) 51 Cal.4th 989, 1002.)

In reviewing Hines's contention with respect to his robbery conviction, we apply the same legal standards as apply to claims for insufficient evidence, as outlined in part III.A., *ante*.

There is substantial evidence that Hines took Woods's sunglasses by the use of force or fear. During the initial encounter between the two men, Hines followed Woods and told Woods that he was a West Side Crips gang member. A short time later, while Woods was standing at a street corner waiting to cross, Hines stood near him and asked a woman who was nearby, " 'You want to see what I do to him?' " Hines said this loudly enough so that Woods could hear, and Woods interpreted the statement as Hines indicating that he was planning to physically harm Woods. Woods was very nervous at this point and wanted to get away from Hines. As Woods attempted to walk away, Hines followed Woods, partially facing him, and made a gesture with his fist as if he were about to hit Woods. Woods flinched and stopped in the middle of the street. It was at that point that Hines snatched the sunglasses *off of Woods's face* and ran away. From these facts, a jury could reasonably conclude that Hines intended to cause fear in Woods, and that he in fact did so. Further, these facts support a conclusion that Hines used force to take Woods's sunglasses from him.

13

In addition, the evidence is more than sufficient to support the conclusion that Hines took Woods's sunglasses with the intent to permanently deprive Woods of them. Hines and Woods did not know each other prior to this incident. As soon as Hines grabbed the sunglasses off of Woods's face, he immediately ran away from Woods. Hines admitted that he "stole" the sunglasses from Woods. Further, Hines threw the sunglasses into the gutter only after Woods chased him and saw him hiding behind some "sparse" bushes. The jury could reasonably infer that Hines's plan was to keep the sunglasses, or, at a minimum, ensure that Woods did not get his sunglasses back, and that this plan changed only after Woods followed Hines, spotted him, and said that he wanted his sunglasses back.

The evidence presented at trial constitutes substantial evidence that Hines committed a robbery against Woods.

C.     *Grand theft is a lesser included offense of robbery; because the jury convicted Hines of both robbery and grand theft, his conviction for robbery should be affirmed, and his conviction for grand theft, the lesser crime, should be reversed*

Hines argues that his conviction for robbery should be reversed because the trial court erred in failing to instruct the jury sua sponte that the crime of grand theft, of which he was also charged and convicted, is a lesser included offense of robbery. According to Hines, if the jury had been properly instructed, a reasonable jury could have concluded that Hines committed only the lesser offense of grand theft, not robbery. Hines is only partially correct. He is correct that the trial court should have instructed the jury that grand theft is a lesser included offense of robbery. However, Hines is incorrect about the remedy for this error.

14

The trial court instructed the jury with CALCRIM No. 1600 on the law pertaining to robbery, as well as with CALCIM No. 1800 on the law pertaining to grand theft. The court also instructed the jury that it had to unanimously agree on which act or acts constituted the robbery. After being so instructed, the jury convicted Hines of both robbery and grand theft.

"It is settled that the crime of theft, whether divided by degree into grand theft or petty theft, is a lesser included offense of robbery. [Citation.] Robbery includes the added element of force or fear. [Citation.]" (*People v. DePriest* (2007) 42 Cal.4th 1, 50.) Further, a court "must instruct on general legal principles closely related to the case. This duty extends to necessarily included offenses when the evidence raises a question as to whether all the elements of the charged offense are present." (*Ibid.*)

"[W]hen the evidence is sufficient to support a finding of guilt of both the offense charged and a lesser included offense, the jury must be instructed that if they entertain a reasonable doubt as to which offense has been committed, they must find the defendant guilty only of the lesser offense." (*People v. Dewberry* (1959) 51 Cal.2d 548, 555.) The trial court has a duty to provide this instruction sua sponte, and the jury must be given this instruction regardless whether the lesser offense is charged or uncharged. (*People v. Crone* (1997) 54 Cal.App.4th 71, 78 (*Crone*).)

Hines was charged with both robbery and the lesser included offense of grand theft, based on the same conduct. Thus, the trial court should have provided the instruction identified in *Dewberry* sua sponte. However, the trial court's error is subject to the harmless error analysis provided in *People v. Watson* (1956) 46 Cal.2d 818, 836.

15

(*Crone*, *supra*, 54 Cal.App.4th at p. 78.)  Under *Watson*, reversal is not warranted unless "it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred."  (*People v. Breverman* (1998) 19 Cal.4th 142, 178.) "The Supreme Court has emphasized 'that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an abstract *possibility*. [Citations.]' "  (*People v. Soojian* (2010) 190 Cal.App.4th 491, 519.)

Contrary to Hines's argument on appeal, the trial court's failure to instruct the jury in accordance with *Dewberry* was harmless as to Hines's robbery conviction because the jury found Hines guilty of the crime of robbery beyond a reasonable doubt, and, as we have already determined, there is substantial evidence to support this conviction.  The jury was instructed that jurors had to unanimously agree on the facts supporting a robbery verdict.  Given the strength of the evidence that Hines used force or fear to take Woods's sunglasses with the intent to permanently deprive Woods of them, there is no reasonable probability that Hines would have received a more favorable outcome if the trial court had instructed the jury that if jurors entertained a reasonable doubt as to which offense had been committed (i.e. robbery or grand theft), they must find the defendant guilty of only the lesser offense.  There is no basis to reverse Hines's robbery conviction.

Hines's conviction for grand theft, however, cannot stand.  "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed."  (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)  The People concede that

16

Hines's conviction for grand theft must be reversed under this principle. We therefore reverse Hines's conviction on count 3.

D.    *The one-year enhancement pursuant to section 667.5, subdivision (b) must be stricken because the trial court imposed a five-year enhancement pursuant to section 667, subdivision (a)(1)*

Hines argues that the trial court erred in using one of his prior convictions to impose both a one-year sentence enhancement under section 667.5, subdivision (b), as well as a five-year sentence enhancement under section 667.5, subdivision (a)(1).

A court may not impose a five-year sentence enhancement under section 667, subdivision (a)(1) and a one-year sentencing enhancement under section 667.5, subdivision (b), based on the same prior prison term conviction. (*People v. Perez* (2011) 195 Cal.App.4th 801, 805 (*Perez*); *People v. Jones* (1993) 5 Cal.4th 1142, 1150-1153.) When multiple sentence enhancement provisions are available with respect to the same prior offense, one of which is a section 667 enhancement, the greatest enhancement should be imposed. (*Jones*, *supra*, at p. 1150.)

The People concede that Hines is correct that the trial court relied on Hines's 2003 conviction to impose both a five-year sentence enhancement under section 667, subdivision (a), and a one-year sentence enhancement under section 667.5, subdivision (b). The People agree that this court should strike the one-year enhancement under section 667.5, subdivision (b), and order that Hines's abstract of judgment be corrected to reflect the striking of this enhancement. We accept the People's concession and order that the one-year enhancement imposed under section 667.5, subdivision (b) must be stricken. (See *Perez*, *supra*, 195 Cal.App.4th at p. 805.)

17

IV.

DISPOSITION

Hines's conviction for grand theft (count 3) is reversed, and the one-year sentence enhancement imposed pursuant to section 667.5, subdivision (b) based on Hines's 2003 conviction in case No. SCD174231 is stricken.  In all other respects, the judgment is affirmed.

The trial court is directed to amend the abstract of judgment to reflect these modifications and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

18